VIRGINIA:  IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

WELLS FARGO BANK, N.A.,

                Complainant,

v.

SHARBANOU AZAR HAJIAN,
Serve: 4817 Autumn Glory Way
       Chantilly, VA 20151

ALEX MEHRABI,
Serve: 4817 Autumn Glory Way
       Chantilly, VA 20151

IRAN ZOLFAGHAR
Serve: 4817 Autumn Glory Way
       Chantilly, VA 20151

ONE VALLEY BANK- EAST, N.A.
NKA BRANCH BANKING AND TRUST COMPANY,
Serve: c/o CT Corporation System, Registered Agent
       4701 Cox Rd, Ste 301
       Glen Allen, VA  23060

RHEUBEN H DONNELLY CORP,
Serve: c/o John R. Serverino, Esq
       11350 Random Hills Rd
       Fairfax, VA 22030

CENTRAL FIDELITY NATIONAL BANK
NKA WELLS FARGO BANK, N.A.,
Serve: c/o Corporation Service Company, Registered Agent
       Bank of America CTR, 16th Floor
       1111 E. Main Street
       Richmond, VA 23219

VOLT INFORMATION SCIENCES INC.
DBA DATANATIONAL,
Serve: c/o CT Corporation System, Registered Agent
       4701 Cox Rd, Ste 301
       Glen Allen, VA  23060

2014-07527

Case No.: _____



FILED
CIVIL INTAKE
2014 JUN -4 PM 12: 04
JOHN T. FREY
CLERK, CIRCUIT COURT
FAIRFAX, VA

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

EXHIBIT
1

**BELL ATLANTIC VIRGINIA INC.**
**NKA VERIZON VIRGINIA INC,**
Serve: c/o  CT Corporation System, Registered Agent
    4701 Cox Rd, Ste 301
    Glen Allen, VA  23060

            **Respondents.**

## COMPLAINT

The Complainant, Wells Fargo Bank, N.A. (hereinafter referred to as "Complainant"),

by counsel, files its Complaint and represents unto the Court as follows:

## PARTIES

1.    Wells Fargo Bank, N.A. ("Wells Fargo") is a corporation doing business in the

Commonwealth of Virginia and is beneficiary of a Deed of Trust dated May 5, 2005.

2.    Sharbanou Azar Hajian ("Hajian") upon information and belief, is an individual

residing in the County of Fairfax, Virginia, and has an interest in the real property that is the

subject of this litigation.

3.    Alex Mehrabi ("Mehrabi") upon information and belief, is an individual residing

in the County of Fairfax, Virginia, and has an interest in the real property that is the subject of

this litigation.

4.    Iran Zolfaghar ("Zolfaghar") upon information and belief, is an individual

residing in the County of Fairfax, Virginia, and has an interest in the real property that is the

subject of this litigation.

5.    One Valley Bank- East, N.A. ("One Valley") now known as Branch Banking

and Trust Company, is a judgment creditor with a lien more particularly described below and

may have an interest in the real property that is the subject of this litigation.

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

2

6.      Rheuben H Donnelly Corp ("Donnelly Corp") is a judgment creditor with a lien more particularly described below and may have an interest in the real property that is the subject of this litigation.

7.      Central Fidelity National Bank ("Central Fidelity") now known as Wells Fargo Bank, N.A., is a judgment creditor with a lien more particularly described below and may have an interest in the real property that is the subject of this litigation.

8.      Volt Information Sciences Inc. dba DataNational ("DataNational") is a judgment creditor with a lien more particularly described below and may have an interest in the real property that is the subject of this litigation.

9.      Bell Atlantic Virginia Inc. ("Bell Atlantic") now known as Verizon Virginia Inc., is a judgment creditor with a lien more particularly described below and may have an interest in the real property that is the subject of this litigation.

**JURISDICITON**

10.     Personal jurisdiction over the Respondents in this action is appropriate because Respondents have or may have an interest in real property located in County of Fairfax, Virginia.

11.     Venue is appropriate in this Court pursuant to Va. Code §8.01-261(3)(b) and because this action concerns real property located in the County of Fairfax, Virginia.

**FACTS**

12.     On or about May 6, 2005, Sharbanou Azar Hajian, Alex Mehrabi and Iran Zolfaghar were deeded real property located at 4817 Autumn Glory Way, Chantilly, VA 20151

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

3

("Property") by General Warranty.   This Deed was recorded in the land records of this jurisdiction on May 10, 2005, as Book 17266, Page 1757, and re-recorded on September 13, 2005 as Book 17736, Page 0097, to correct the spelling of grantee, Zolfaghar's last name. The recorded copies of this deed are attached collectively hereto as Exhibit A.

13.    **In conjunction with the purchase of the Property by Hajian, Mehrabi and Zolfaghar for the sum of $980,000.00, Hajian, Mehrabi and Zolfaghar had to sell other properties to obtain part of the funds needed to purchase the Property. This is evidenced by the three (3) separate HUD-1 settlement statements ("HUD-1"). The first HUD-1 is dated April 28, 2005, whereby Zolfaghar sold a property and received the sum of $309,289.51. The second HUD-1 is dated May 3, 2005, whereby Hajian sold a property and received the sum of $213,252.45. A portion of the monies received from the aforesaid two properties were necessary for Hajian, Mehrabi and Zolfaghar to acquire the Property as more particularly described on the third HUD-1 which is dated May 6, 2005. Copies of the both HUD-1s are collectively attached hereto as Exhibit B.**

14.    On May 6, 2005, Hajian and Mehrabi, alone, executed a deed of trust in the original principal amount of $530,000.00 ("DOT") conveying the described property to Chris Beatley and Charles E. Bell as the trustees, and Union Federal Bank of Indianapolis as the lender. Attached hereto and incorporated herein as Exhibit C is a recorded copy of this DOT.

15.    Despite being a title owner of the Property, Zolfaghar did not execute the DOT.

16.    No deed has ever been put to record in the land records for this jurisdiction divesting Zolfaghar of title to the Property.

17.    Zolfaghar remains a title owner of the Property.

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

4

18.     Complainant is now the holder of the DOT.

19.     **It was the intent of the parties for the DOT to be valid and fully enforceable first priority lien as secured by all Property owners' interest in the Property.**

20.     The failure of Zolfaghar to execute the DOT has caused this intent to fail.

21.     The failure to have all parties on the DOT at the time or origination on the DOT has created a cloud on title.

22.     One Valley is a judgment creditor pursuant to a judgment against Mehrabi dated October 26, 1994, and recorded in the land records of this jurisdiction on February 27, 1995. A recorded copy of this judgment is attached hereto as Exhibit D.

23.     Donnelly Corp is a judgment creditor pursuant to a judgment against Mehrabi dated March 12, 1996, and recorded in the land records of this jurisdiction on May 2, 1996. A recorded copy of this judgment is attached hereto as Exhibit E.

24.     Central Fidelity is a judgment creditor pursuant to a judgment against Hajian and Mehrabi dated February 18, 1997, and recorded in the land records of this jurisdiction on April 2, 1997. A recorded copy of this judgment is attached hereto as Exhibit F.

25.     DataNational is a judgment creditor pursuant to a judgment against Mehrabi dated August 21, 1997, and recorded in the land records of this jurisdiction on September 24, 1997. A recorded copy of this judgment is attached hereto as Exhibit G.

26.     Bell Atlantic is a judgment creditor pursuant to a judgment against Mehrabi dated April 15, 1999, and recorded in the land records of this jurisdiction on April 23, 1999. A recorded copy of this judgment is attached hereto as Exhibit H.

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

27.     The ends of justice and equity require that this Court enter an Order directing the
DOT be reformed, *nunc pro tunc*, to May 10, 2005, to include Zolfaghar's interest in the
Property, or that an equitable lien exists against Zolfaghar's interest in the property.

### COUNT I (all parties)

### (Reformation of the Deed of Trust)

28.     Complainant re-alleges and incorporates the allegations contained in Paragraphs
1 through 27 of the Complaint as if stated fully herein.

29.     In the DOT, Hajian and Mehrabi pledged that they were lawfully seised of the
entirety of the Property.  See Exhibit C.

30.     Hajian, Mehrabi and Zolfagher are the title owners of the Property.

31.     Despite this fact, only Hajian and Mehrabi executed the DOT.

32.     It was the intent of the parties to convey all title owners' interest in the Property
to secure the DOT.

33.     Deeds of Trust are allowed to be reformed instances where there is fraud or where
there is a mutual mistake of the parties.

34.     It was a mutual mistake on behalf of the parties that resulted in the DOT only
being executed by Hajian and Mehrabi.

35.     To effectuate the parties' intent and to remedy the mutual mistake, the DOT
should be reformed to include Zolfaghar's interests in the Property.

36.     Further, this Court should enter an Order directing the DOT be reformed to
include Zolfaghar's interest in the Property, *nunc pro tunc*, to May 10, 2005, so that the intent of
the parties to have a valid, first priority deed of trust secured by the Property be accomplished.

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

6

## COUNT II (all parties)

### (Declaratory Judgment)

37.    Complainant re-alleges and incorporates the allegations contained in Paragraphs 1 through 36 of the Complaint as if stated fully herein.

38.    Due to the inadvertent error in the failure to have all title owners execute the DOT, not all of the title owners' interests in the Property were conveyed at the time the DOT was executed.

39.    This error has frustrated the parties' intent to have a fully secured deed of trust.

40.    This Court should enter an Order to be recorded in the land records for this jurisdiction declaring that the DOT encumbers Hajian, Mehrabi and Zolfaghar's interest in the Property and either order Zolfaghar to execute the DOT or have a special commissioner appointed to execute on his behalf.

## COUNT III (all parties)

### (Quiet Title)

41.    Complainant re-alleges and incorporates the allegations contained in Paragraphs 1 through 40 of the Complaint as if stated fully herein.

42.    In the ends of justice and equity and as a matter of law, this Court should enter an Order declaring that the DOT encumbers Hajian, Mehrabi and Zolfaghar's interests in the Property.

43.    Additionally, this Court should enter an Order directing the reformed DOT, including all owners of interests in the Property, be recorded in the land records for this

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

jurisdiction so that the intent of the parties to have a valid, first priority deed of trust secured by the Property be accomplished.

### COUNT IV (all parties)

### (Equitable Lien)

44.    Complainant re-alleges and incorporates the allegations contained in Paragraphs 1 through 43 of the Complaint as if stated fully herein.

45.    Based upon the circumstances described herein, it would be improper and inequitable for either Hajian, Mehrabi and Zolfaghar to retain their interests in the Property free and clear of any encumbrances of Complainant's in the Property.

46.    Hajian and Mehrabi pledged that they were the sole owners of the Property when the DOT was executed and Complainant relied on that representation when advancing the funds secured by the DOT.

47.    Equity and the ends of justice require that this Court impose an equitable lien against the Property for Complainant's benefit.

48.    There is no remedy at law for the Complainant where they can establish their lien as intended to be secured by the Property.

WHEREFORE, Complainant, Wells Fargo Bank, N.A., prays that this Court enter an Order:

(a)    reforming the deed of trust dated May 6, 2005 (Exhibit B), *nunc pro tunc*, to May 10, 2005, to include the interest of Iran Zolfaghar, thereby creating a valid and enforceable lien against the Property in favor of Wells Fargo Bank, N.A., all of which would reflect the intent of the parties; and

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

8

(b)     enter an Order declaring the deed of trust dated May 6, 2005 (Exhibit B).

includes the interests of Sharbanou Azar Hajian, Alex Mehrabi and Iran Zolfaghar so as to make

the deed of trust fully encumber the interests of all title owners of the Property as was the intent

of the parties and declare that said deed of trust is a valid first priority lien as secured by the

Property and entitled to first payment among all unrecorded and recorded lienholders; or

(c)     alternatively, appoint a special commissioner on behalf of Iran Zolfaghar to

execute the May 6, 2005, deed of trust, *nunc pro tunc*, to May 10, 2005, and convey his interests

in the Property in trust so the DOT will be fully secured by the Property; or

(d)     alternatively, reforming the Deed (Exhibit A) to remove Iran Zolfaghar's interest

in the Property, *nunc pro tunc*, to May 10, 2005; or

(e)     declare that an equitable lien exists on Iran Zolfaghar's interests in the Property

in favor of the Complainant; and

(f)     ordering that such an Order be spread among the land records for this

jurisdiction, and

(g)     awarding Wells Fargo Bank, N.A., such other and further relief as the nature of

its case may require and to this Court shall seem proper.

Respectfully submitted,

**WELLS FARGO BANK, N.A.**

By: _____
            Of Counsel

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

Kelly R. Gring, Esq (VSB # 75999)
Trenita J. Stewart, Esq (VSB # 48412)
Glasser & Glasser, P.L.C.
580 E. Main Street
Suite 600
Norfolk, Virginia 23510
(757) 625-6787
kgring@glasserlaw.com
*Counsel for Wells Fargo Bank, N.A.*

*File No. 108671*

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

## NOTICE

**This proceeding is pending in the Circuit Court of the County of Fairfax, Virginia. Upon expiration of (10) days after this notice is received and the expiration of the statutory period within which to respond, without further notice, the entry of a final order as prayed for in these pleadings may be requested without further notice.**

## CERTIFICATE OF MAILING

I hereby certify that on this _30_ day of May, 2014, a true copy of the foregoing Complaint was mailed to the Respondents at the following addresses:

Sharbanou Azar Hajian,
4817 Autumn Glory Way
Chantilly, VA 20151

Alex Mehrabi,
4817 Autumn Glory Way
Chantilly, VA 20151

Iran Zolfaghar
4817 Autumn Glory Way
Chantilly, VA 20151

One Valley Bank- East, N.A.
NKA Branch Banking and Trust Company
c/o CT Corporation System, Registered Agent
4701 Cox Rd, Ste 301
Glen Allen, VA 23060

Rheuben H Donnelly Corp
c/o John R. Serverino, Esq
11350 Random Hills Rd
Fairfax, VA 22030

Central Fidelity National Bank
NKA Wells Fargo Bank, N.A.
c/o Corporation Service Company, Registered Agent
Bank of America CTR, 16th Floor
1111 E. Main Street
Richmond, VA 23219

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

10

Volt Information Sciences Inc.
DBA DataNational
c/o CT Corporation System, Registered Agent
4701 Cox Rd, Ste 301
Glen Allen, VA  23060

Bell Atlantic Virginia Inc.
NKA Verizon Virginia Inc.
c/o  CT Corporation System, Registered Agent
4701 Cox Rd, Ste 301
Glen Allen, VA  23060

_____
Kelly K. Gring

**Glasser and Glasser, P.L.C.**
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

2005018400.001    BK 17266 1757    05/10/2005 08:20:30

Web Cover Sheet Version 1.0                                                Page 1 of 1

# Fairfax County Land Records
## Cover Sheet

**Instruments**
DEED

**Grantor(s)**
LEE, HYUN UK AND LEE, SUNG IL _I_N

**Grantee(s)**
MEHRADI, ALEX AND HAJIAN, SHARBANOU AZAR AND ZOLSAGHAR, IRAN _I_N

| Consideration | 930,000.00 | Consideration % | 100 |
|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | |
| DEM Number | | Tax Map Number | 014-1-1/80/00/4 |
| Original Book | | Original Page | |
| Title Company | FIRST WASHINGTON TITLE COMPANY | Title Case | 05-1044 |
| Property Descr. | LOT 4, HUNTER SUBDIVISION | | |
| Certified | No | Copies | 0 | Page Range | |



http://166.94.9.156/coversheet/cover_request.cfm                5/9/2005

EXHIBIT
A
ALLSTATE LEGAL®

BK 17266 1758

Consideration $980,000.00
Tax Map No: 044-4-18-0004
Grantee Address:
4817 Autumn Glory Way
Chantilly, Virginia 20151

After Recording, Please Return to:
First Washington Title Company
6601 Little River Tnpk. #120
Alexandria, Virginia 22312
(703) 256-3434
Prepared by: Jae Kim, Esq.

THIS DEED, made this 6th day of May, 2005, by and between Hyun Uk Lee and Sung Il Lee, H/W, the parties of the first part (GRANTOR), and Alex Mehrabi and Sharbanou Azar Hajian and Iran Zolsaghar, the parties of the second part (GRANTEE).

WITNESSETH:

That for and in consideration of Ten Dollars ($10.00) cash in hand paid and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, the GRANTOR does hereby grant, bargain, sell, and convey unto the GRANTEE, the parties of the second part with General Warranty and in Fee Simple, all of the following-described lot or parcel of land together with improvements thereon, situate, lying and being in the Fairfax County, Commonwealth of Virginia:

All that certain lot or parcel of land situated, lying and being in the Fairfax County, Virginia, and being more particularly described as follows:

Lot 4, HUNTER SUBDIVISION, as the same appears duly dedicated, platted and recorded in Deed Book 12151 at Page 1960, among the land records of the Fairfax County, Virginia.

AND BEING the same property conveyed to the first parties by Deed dated December 20th, 2001 and recorded December 21st, 2001 as in Deed Book 12508 on Page 1950, among the land records of the Fairfax County, Virginia.

This conveyance is made expressly subject to all easements, restrictions, and reservations of record, which legally affect the title to said property. The parties of the first part covenant that they have the right to convey said property to the parties of the second part; that the parties of the second part shall have quiet possession of said

BK 17266 1759

property, free and clear of all encumbrances, except as hereinabove set forth; and that the parties of the first part will execute such further assurances on said property as may be requisite.

WITNESS the following signatures and seals on the day and year first herebefore written.

Hyun Uk Lee

STATE OF VIRGINIA    )
                )
COUNTY OF FAIRFAX    )    To-Wit:

Hyun Uk Lee, personally appeared and subscribed and sworn before me to the foregoing Deed on this 6th day of May, 2005.

                               (Seal)
                    Notary Public

My Commission Expires:  1 31 / 2006

Sung Il Lee

STATE OF VIRGINIA    )
                )
COUNTY OF FAIRFAX    )    To-Wit:

Sung Il Lee, personally appeared and subscribed and sworn before me to the foregoing Deed on this 6th day of May, 2005.

                               (Seal)
                    Notary Public

My Commission Expires:  1 31 / 2008

2

05/10/2005

Apr 29 2005 14:31   JOBIN REALTY VIENNA       7035569590          p.3

## A. Settlement Statement

U.S. Department of Housing
and Urban Development

OMB No. 2502-0265

EXHIBIT
B

B. Type of Loan

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number HE040005 | 7. Loan Number 876060708 | 8. Mortgage Insurance Case Number |
| 4. ☐ VA | 5. ☐ Conv. Ins. | | | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Edwin Alberto FAGGIONI Carolina C FAGGIONI 6069 Bonnie Bern Court Burke, VA 22015 | Behareh GANJALI Iran ZOLFAGHARI 4817 Autumn Glory Way Chantly, VA 20151 | Bank of America, N.A. 900 W. Trade St. Charlotte, NC 28255 |

| G. Property Location 6069 Bonnie Bern Court Burke, VA 22016 Lot 35, Sec 6, BURKE STATION SQUARE Fairfax County, VA | H. Settlement Agent The Settlement Group Inc. Place of Settlement 5100 Leesburg Pike, Suite 301 Alexandria, VA 22302 | I. Settlement Date 04/28/05 DO: 04/26/05 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 395,000.00 | 401. Contract sales price | 395,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 8,373.82 | 403. | |
| 104. 2nd Qtr HOA Dues   04/28 to 06/30 | 101.68 | 404. 2nd Qtr HOA Dues   04/28 to 06/30 | 101.68 |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes            to | | 406. City/town taxes            to | |
| 107. County taxes            to | | 407. County taxes            to | |
| 108. Assessments            to | | 408. Assessments            to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 403,475.50 | 420. GROSS AMOUNT DUE TO SELLER | 395,101.68 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT TO SELLER | |
| 201. Deposit or earnest money | 5,000.00 | 501. Excess Deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 316,000.00 | 502. Settlement charges to seller (line 1400) | 24,905.90 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 68,358.00 |
| 205. 2nd Trust Loan Proceeds | 59,101.82 | Wells Fargo Bank, N.A. | |
| | | 505. Payoff of second mortgage loan | |
| 206. | | 505. Payoff Delivery Fee | 25.00 |
| 207. Lender Paid Closing Cost Credit | 500.00 | 507. | |
| 208. | | 508. Security Deposit | 500.00 |
| 209. Rent Back thru 5/15 (17 days) | 1,077.84 | 508. Rent Back thru 5/15 (17 days) | 1,077.84 |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes            to | | 510. City/town taxes            to | |
| 211. County taxes   01/01 to 04/28 | 915.84 | 511. County taxes   01/01 to 04/28 | 915.84 |
| 212. Assessments            to | | 512. Assessments            to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY / FOR BORROWER | 382,595.50 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 85,812.47 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 403,475.50 | 601. Gross amount due to seller (line 420) | 395,101.68 |
| 302. Less amounts paid by/for borrower (line 220) | 382,595.50 | 602. Less reduction amount due to seller (line 520) | 85,812.47 |
| 303. CASH   FROM   BORROWER | 40,880.00 | 603. CASH   TO   SELLER | 309,289.61 |

REGPA, HB 4305.2 - REV. HUD(3/86)

Apr 29 2005 14:32   JOBIN REALTY VIENNA        7035569590        p.4

File Number: H5040005

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT
PAGE 2

| L. SETTLEMENT CHARGES: | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $ 395,000.00 @ 6.00 = | | | 23,700.00 | | |
| Division of commission (line 700) as follows: | | | | | |
| 701. $ 11,850.00 to RelMax Allegiance | | | | | |
| 702. $ 11,850.00 to Jobin Realty | | | | | |
| 703. Commission paid at Settlement | 5000 Deposit Hold By ReMax Allegiance | | | | 23,700.00 |
| 704. Admin Fee | ReMax Allegiance | | | 200.00 | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | P.O.C. | | |
| 801. Loan Origination Fee | % | | | | |
| 802. Loan Discount | % | | | | |
| 803. Appraisal Fee | to Homefocus Services, LLC | | 245L | | |
| 804. Credit Report | to First American Credco | | 0.80L | | |
| 805. Tax Service Fee | to Homefocus Tax Services, LLC | | | 75.00 | |
| 806. Doc Preparation Fee | to | | | | |
| 807. Flood Cert Fee | to LBI Flood Services | | | 11.00 | |
| 808. Application Fee | Bank of America, N.A. | | | 300.00 | |
| 809. Lender Closing Fee | Bank of America, N.A. | | | 619.00 | |
| 810. Courier Fee | Bank of America, N.A. | | 6.00L | | |
| 811. | | | | | |
| 812. | | | | | |
| 813. | | | | | |
| 814. | | | | | |
| 815. | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | | |
| 901. Interest from 04/28/05 to 05/01/03 @$ 44.37 /day | | | 3 day(s) | 133.11 | |
| 902. Mortgage Insurance Premium | to | | | | |
| 903. Hazard Insurance Premium | 1 yrs. to Erie Insurance Group | | | 499.00 | |
| 904. | | | | | |
| 905. | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | | |
| 1001. Hazard Insurance | 3 mo. @$ 41.59 /mo. | | | 124.77 | |
| 1002. Mortgage Insurance | mo. @$ /mo. | | | | |
| 1003. City property taxes | mo. @$ /mo. | | | | |
| 1004. County property taxes | 4 mo. @$ 398.06 /mo. | | | 1,586.48 | |
| 1005. Annual Assessments | mo. @$ /mo. | | | | |
| 1006. | mo. @$ /mo. | | | | |
| 1007. | mo. @$ /mo. | | | | |
| 1008. Aggregate Credit for Hazard/Flood Ins, City/County Prop Taxes, Mortgage Ins & Annual Assessments | | | | -291.16 | |
| 1100. TITLE CHARGES | | | | | |
| 1101. Settlement or closing fee | to The Settlement Group, Inc. | | | 06.00 | 195.00 |
| 1102. Abstract or title search | to | | | | |
| 1103. Title examination | to Tri-County/The Settlement Group, Inc. | | | 200.00 | |
| 1104. Title Insurance binder | to | | | | |
| 1105. Document preparation | to Fredericks & Stephens, PC | | | | 450.00 |
| 1106. Notary fees | to | | | | |
| 1107. Attorney's fees | to | | | | |
| (includes above item No: ) | | | | | |
| 1108. Title Insurance | to Fidelity National Title Ins Co/TSG | | | 1,806.60 | |
| (includes above item No: Line 1104 | | | | | |
| 1109. Lender's coverage. 316,000.00 — 693.40 | | | FIDELITY ENHANC | | |
| 1110. Owner's coverage. 395,000.00 — 913.20 | | | | | |
| 1111. R-5 Form Processing Fee | The Settlement Group, Inc. | | | | 35.00 |
| 1112. Release Processing Fee | The Settlement Group, Inc. | | | | 116.00 |
| 1113. Delivery/Handling Fee | Speedy Courier/The Settlement Group, Inc | | | 08.00 | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | | |
| 1201. Recording fees | Deed $ 35.00 ; Mortgage $ 48.00 ; Release $ | | | 70.00 | |
| 1202. City/county/stamps | Deed $ 329.17 ; Mortgage $ 263.34 | | | 592.51 | |
| 1203. State tax/stamps | Deed $ 987.50 ; Mortgage $ 790.00 | | | 1,777.50 | |
| 1204. Grantor's Tax | | | | | 395.00 |
| 1205. | | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. Survey | to Alexandria Surveys International, LLC | | | 275.00 | |
| 1302. Pest Inspection | to Century Termite & Pest Control | | | 30.00 | |
| 1303. Home Warranty paid by S.A. | HMS of the Mid-Atlantic States | | 3768 | | 415.00 |
| 1304. | | | | | |
| 1305. | | | | | |
| 1306. | | | | | |
| 1307. | | | | | |
| 1308. | | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103 and 502, Sections J and K) | | | | 8,373.82 | 24,906.00 |

RESPA, HB 4305.2 - REV. HUD1(3/06)

05/03/2005  12:13  7835000147    KAPLIN ABBARKIN    PAGE  02

OMB NO. 2502-0265

**A.**
**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT**
**SETTLEMENT STATEMENT**

**B. TYPE OF LOAN:**
1. ☐ FHA    2. ☐ FmHA    3. ☒ CONV. UNINS.    4. ☐ VA    6. ☐ CONV. INS.
6. FILE NUMBER: 0502724
7. LOAN NUMBER: 6401973
8. MORTGAGE INS CASE NUMBER:

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown here. Items marked "(POC)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:**
Daniel MAUTINO and
Nataly MAUTINO
8087 Bonnie Court
Burke, VA 22015

**E. NAME AND ADDRESS OF SELLER:**
Barbanou AZAR HAJIAN and
Bahereh GANJ/ALI

**F. NAME AND ADDRESS OF LENDER:**
Long Beach Mortgage
78 N. Fairway Drive Bldg A
Vernon Hills, IL 60061

**G. PROPERTY LOCATION:**
8087 Bonnie Court
Burke, VA 22015
Fairfax County, Virginia
Lot 34
Section 6
BURKE STATION SQUARE

**H. SETTLEMENT AGENT:** 41-2144063
The Americas Title Group, LLC
PLACE OF SETTLEMENT
7538 Little River Tpke, Suite 206
Annandale, Va 22003

**I. SETTLEMENT DATE:**
May 3, 2005

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract Sales Price | 401,000.00 | 401. Contract Sales Price | 401,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 14,425.23 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments For Items Paid By Seller in advance | | Adjustments For Items Paid By Seller in advance | |
| 106. City/Town Taxes | | 406. City/Town Taxes | |
| 107. County Taxes | | 407. County Taxes | |
| 108. Assessments  06/04/05 to 07/01/05 | 92.42 | 408. Assessments  06/04/05 to 07/01/05 | 92.42 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| | | 413. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 415,527.50 | 420. GROSS AMOUNT DUE TO SELLER | 401,092.42 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | 8,000.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 320,800.00 | 502. Settlement Charges to Seller (Line 1400) | 16,750.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. 2ND TRUST PROCEEDS | 79,826.77 | 504. Payoff of first Mortgage to Countrywide 0003174217 | 64,429.64 |
| 205. | | 505. Payoff of second Mortgage to BB & T MORTGAGE | 100,469.03 |
| 206. | | 506. Deposit retained by broker | 8,000.00 |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. Closing Cost Credit | 1,000.00 | 509. Closing Cost Credit | 1,000.00 |
| Adjustments For Items Unpaid By Seller | | Adjustments For Items Unpaid By Seller | |
| 210. City/Town Taxes | | 510. City/Town Taxes | |
| 211. County Taxes  01/01/05 to 05/04/05 | 880.80 | 511. County Taxes  01/01/05 to 05/04/05 | 880.80 |
| 212. Assessments | | 512. Assessments | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. Home Warranty to 2-10 Home Warranty | 318.90 |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 408,387.57 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 187,829.97 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT TO/FROM SELLER: | |
| 301. Gross Amount Due From Borrower (Line 120) | 415,527.50 | 601. Gross Amount Due To Seller (Line 420) | 401,092.42 |
| 302. Less Amount Paid By/For Borrower (Line 220) | 408,387.57 | 602. Less Reductions Due Seller (Line 520) | 187,829.97 |
| 303. CASH ( X FROM)( TO) BORROWER | 9,240.23 | 603. CASH ( X TO)( FROM) SELLER | 213,262.46 |

@007    ALLIED HOME MTG    05/04/2005 14:12 FAX 703 914 1448

## L. SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price | $ 401,000.00  @  %  10,000.00 | | |
| Division of Commission (line 700) as follows: | | | 14,000.00 |
| 701. $ 10,000.00   to   Jobin Realty | | | 203.00 |
| 702. $ 9,000.00    to   Camelot International | Less Deposit Retained   5,000.00 | | |
| 703. Commission Paid at Settlement | | | |
| 704. Transaction Fee | to  Jobin Realty | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 3,555.00 | |
| 801. Loan Origination Fee   1.0000 % | to  USA Financial Services, Inc. | | |
| 802. Loan Discount            % | to | | |
| 803. Appraisal Fee | to | | |
| 804. Credit Report | to | 31.00 | |
| 805. Tax Service Fee | to  Washington Mutual | 13.00 | |
| 806. Flood Certification Fee | to  Long Beach Mortgage | 448.00 | |
| 807. Underwriting Fee | to  Long Beach Mortgage | 600.00 | |
| 808. Processing Fee | to  USA Financial Services, Inc. | 60.00 | |
| 809. Tax Procurement | to  First American | 250.00 | |
| 810. Doc Preparation | to  Long Beach Mortgage | | |
| 811. Yield Spread Premium | to  USA Financial Services, Inc. | POC $3,206.00 | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | |
| 901. Interest From  05/04/05  to  06/01/05  @  $  57.970000/day  ( 28 days   8.8500 %) | | 1,611.20 | |
| 902. Mortgage Insurance Premium for          months to | | | |
| 903. Hazard Insurance Premium for   1.0  years  to Ins Co. | | 1,200.00 | |
| 904. | | | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard Insurance | 2.000  months  @  $  54.53 per month | 109.08 | |
| 1002. Mortgage Insurance | months  @  $  per month | | |
| 1003. City/Town Taxes | months  @  $  per month | | |
| 1004. County Taxes | 7.000  months  @  $  211.33 per month | 1,479.31 | |
| 1005. Assessments | months  @  $  per month | | |
| 1006. | months  @  $  per month | | |
| 1007. | months  @  $  per month | | |
| 1008. | months  @  $  per month | -34.61 | |
| 1009. Aggregate Adjustment | months  @  $  per month | | |
| 1100. TITLE CHARGES | | | 299.00 |
| 1101. Settlement or Closing Fee | to  The America Title Group, LLC | 460.00 | |
| 1102. Abstract or Title Search | to  Title Wills, Inc. | 320.00 | |
| 1103. Title Examination | to  The American Title Group, LLC | 100.00 | |
| 1104. Title Insurance Binder | to  The America Title Group, LLC | 50.00 | |
| 1105. Document Preparation | to  The America Title Group, LLC | | |
| 1106. Notary Fees | to | | 150.00 |
| 1107. Attorney's Fees | to  Raymond J. Shelasky | | |
| (includes above item numbers:) | | | |
| 1108. Title Insurance | to  Chicago Title Insurance Company | 1,666.00 | |
| (includes above item numbers:) | | | |
| 1108. Lender's Coverage | 330,850.00  1,075.80 | | |
| 1110. Owner's Coverage | $  401,000.00   593.00 | | 210.00 |
| 1111. Release Preparation Fee | to  The America Title Group, LLC | | 20.00 |
| 1112. RWAS-E Compliance Fee | to  The America Title Group, LLC | 75.00 | 60.00 |
| 1113. Delivery/Shipping/Overnight | to  The America Title Group, LLC | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | 79.00 | |
| 1201. Recording Fees: Deed $  33.00; Mortgage $  46.00;   Releases $ | | 605.00 | |
| 1202. City/County Tax/Stamps: Grantee Tax   314.07 Grantee Tax   207.25 | | 1,604.50 | |
| 1203. State Tax/Stamps:  Grantee Tax   1,003.50 Mortgage   692.00 | | | |
| 1204. Grantor Deed Recording Tax | to  County Clerk of the Circuit Court | | 451.00 |
| 1205. | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | 275.00 | |
| 1301. Survey | to  Sam Whitson Land Surveying, Inc. | | 335.00 |
| 1302. Pest Inspection | to  Century Termite & Pest Control | 275.00 | |
| 1303. Transaction Fee | to  Camelot International | 140.00 | |
| 1304. HOA DUES  July to Sept 2005 | to  Burke Town Hours | | |
| 1305. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | | 14,435.38 | 15,730.00 |

Certified to be a true copy.

05/05/2005 10:19 FAX 703 914 1448    ALLIED HOME MTG    @008
05/05/2005 09:47 FAX 703 9   771    The Americas Title Group    @006/027

## ACKNOWLEDGMENT OF RECEIPT OF SETTLEMENT STATEMENT

**Borrower:** Daniel MAUTINO and Nataly MAUTINO
**Seller:** Barbanou AZAR HAJIAN and Behanoh GANJALI
**Lender:** Long Beach Mortgage
**Settlement Agent:** The Americas Title Group, LLC
(703)914-7770
**Place of Settlement:** 7535 Little River Tpke, Suite 206
Annandale, Va 22003
**Settlement Date:** May 3, 2005
**Property Location:** 8067 Bonnie Court
Burke, VA 22015
Fairfax County, Virginia
Lot 34
Section 5
BURKE STATION SQUARE

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Daniel MAUTINO

Nataly MAUTINO

Barbanou AZAR HAJIAN

Behaneh GANJALI

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(05-00224.PFC/05-00224/6)

## A. Settlement Statement

U.S. Department of Housing and Urban Development

HUD-1 (3/86) OMB No. 2502-0265

**B. Type of Loan**

1. ☐ FHA  2. ☐ FmHA  3. ☐ Conv. Unins.  4. ☐ VA  5. ☒ Conv. Ins.

| 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|
| 03-1044 | 338 | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name and Address of Borrower | E. Name and Address of Seller | F. Name and Address of Lender |
|---|---|---|
| Sharbanou Azar Hajian and Alex Mehrabi 6067 Bonnie Bern Court Burke, Virginia 22015 | Hyun Uk Lee and Sung R Lee 4817 Autumn Glory Way Chantilly, Virginia 20151 | Union Federal Bank of Indianapolis 7500 W. Jefferson Blvd. Fort Wayne, IN 46804  **FINAL** |

| G. Property Location | H. Settlement Agent |
|---|---|
| 4817 Autumn Glory Way Chantilly , Virginia 20151 | First Washington Title Company |

| | Place of Settlement | I. Settlement Date |
|---|---|---|
| | 6601 Little River Tnpk. Suite #120 Alexandria, VA 22151 | 05/06/03 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | | |
|---|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | | |
| 101. Contract sales price | 980,000.00 | 401. Contract sales price | | 980,000.00 |
| 102. Personal property | | 402. Personal property | | |
| 103. Settlement charges to borrower (line 1400) | 21,128.40 | 403. | | |
| 104. | | 404. | | |
| 105. | | 405. | | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | | |
| 106. City/town taxes        to | | 406. City/town taxes        to | | |
| 107. County taxes        to | | 407. County taxes        to | | |
| 108. Assessments        to | | 408. Assessments        to | | |
| 109. HOA(4/1/03-5/6/05) | 41.54 | 409. HOA(4/1/05-5/6/05) | | 41.54 |
| 110. | | 410. | | |
| 111. | | 411. | | |
| 112. | | 412. | | |
| **120. Gross Amount Due From Borrower** | 1,001,169.94 | **420. Gross Amount Due To Seller** | | 980,041.54 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | | |
| 201. Deposit or earnest money | 10,000.00 | 501. Excess deposit (see instructions) | | |
| 202. Principal amount of new loan(s) | 530,000.00 | 502. Settlement charges to seller (line 1400) | | 41,080.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | | |
| 204. Proceed from the 2nd Mortgage | | 504. Payoff of first mortgage loan Washington Mutual (05-20-05) | | 531,193.26 |
| 205. | | 505. Payoff of second mortgage loan Wachovia Bank 5/18/05 | | 97,139.70 |
| 206. Realtor Credit Toward Commission | 7,503.00 | 506. Obtain/Process | | 125.00 |
| 207. | | 507. | | |
| 208. | | 508. | | |
| 209. | | 509. | | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | | |
| 210. City/town taxes        to | | 510. City/town taxes        to | | |
| 211. County taxes   01/01/03 to 05/06/05 | 2,814.92 | 511. County taxes   01/01/05 to 05/06/05 | | 2,814.92 |
| 212. Assessments        to | | 512. Assessments        to | | |
| 213. | | 513. | | |
| 214. | | 514. | | |
| 215. | | 515. | | |
| 216. | | 516. | | |
| 217. | | 517. | | |
| 218. | | 518. | | |
| 219. | | 519. | | |
| **220. Total Paid By/For Borrower** | 550,314.92 | **520. Total Reduction Amount Due To Seller** | | 672,352.88 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | | |
| 301. Gross Amount due from borrower (line 120) | 1,001,169.94 | 601. Gross amount due to seller (line 420) | | 980,041.54 |
| 302. Less amounts paid by/for borrower (line 220) | ( 550,314.92) | 602. Less reductions in amt. due seller (line 520) | | ( 672,352.88) |
| 303. Cash  ☒ From  ☐ To Borrower | 450,855.02 | 603. Cash  ☒ To  ☐ From Seller | | 307,688.66 |

**L. Settlement Charges** — Settlement Statement Page 2

| Description | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|
| 700. Total Sales/Broker's Commission based on price $980,000.00 @ 4.0 % = 39,200.00 | | |
| Division of Commission (line 700) as follows: | | |
| 701. $9,800.00 to SJM Properties Inc. | | |
| 702. $29,400.00 to Jobin Realty | | |
| 703. Commission paid at Settlement | | |
| 704. Administrative charge to SJM Properties Inc. | | 39,200.00 |
| 800. Items Payable In Connection With Loan | | 295.00 |
| 801. Loan Origination Fee % to Allied | | |
| 802. Loan Discount % to Allied | 5,962.50 | |
| 803. Appraisal Fee to Allied (POC 400.00) | | |
| 804. Credit Report to Allied (POC 16.40) | 50.00 | |
| 805. Lender's Inspection Fee | 42.60 | |
| 806. Doc. Prep. Fee to Union Federal | | |
| 807. Administration Fee to Union Federal | 100.00 | |
| 808. YSP 2188.90 Allied | 600.00 | |
| 809. Courier fee to Allied | | |
| 810. Flood Determination to Allied | 26.13 | |
| 811. Processing fee to Allied | 14.00 | |
| 812. | 395.00 | |
| 813. | | |
| 814. | | |
| 900. Items Required By Lender To Be Paid In Advance | | |
| 901. Interest from 05/01/05 to 05/06/05 @ $85.31 /day | -426.55 | |
| 902. Mortgage Insurance Premium for months to | | |
| 903. Hazard Insurance Premium for 1 years to State Farm (POC 1,173.00) | | |
| 904. years to | | |
| 905. | | |
| 1000. Reserves Deposited With Lender | | |
| 1001. Hazard Insurance 2 months @ $97.75 per month | 195.50 | |
| 1002. Mortgage Insurance months @ $ per month | | |
| 1003. City property taxes 7 months @ $679.53 per month | 4,756.71 | |
| 1004. County property taxes months @ $ per month | | |
| 1005. Annual assessments months @ $ per month | | |
| 1006. months @ $ per month | | |
| 1007. months @ $ per month | | |
| 1008. Aggregate adjustment months @ $ per month | -684.27 | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee to FWTC | 195.00 | 195.00 |
| 1102. Abstract or title search to IA, Inc. | 150.00 | |
| 1103. Title examination to | | |
| 1104. Title Insurance binder to | | |
| 1105. Document preparation to LOJK | | |
| 1106. Notary fees to | 125.00 | 125.00 |
| 1107. Attorney's fees to | | |
| (includes above items numbers: ) | | |
| 1108. Title Insurance to Chicago Title / FWTC | 3,240.00 | |
| (includes above items numbers: ) | | |
| 1109. Lender's coverage $530,000.00 | | |
| 1110. Owner's coverage $980,000.00 | | |
| 1111. Deed Prep. to LOJK | | 175.00 |
| 1112. | | |
| 1113. | | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording fees: Deed $36.00 ; Mortgage $48.00 ; Release $ | | |
| 1202. City/county tax/stamps: Deed $816.34 ; Mortgage $571.44 | 84.00 | |
| 1203. State tax/stamps: Deed $2,450.00 ; Mortgage $1,715.00 | 1,387.78 | |
| 1204. Grantor's Tax; to Fairfax County | 4,165.00 | |
| 1205. | | 980.00 |
| 1300. Additional Settlement Charges | | |
| 1301. Survey to Leslie C. Schwermann | | |
| 1302. Pest Inspection to Superior Pest Management | 225.00 | |
| 1303. HOA(7/1/2003-9/30/2005) to Preserve at Wynmar/Koger Management | | 35.00 |
| 1304. Overnight/courg/misc to FWTC | 155.00 | |
| 1305. Administrative Charge to Jobin Realty | 75.00 | 75.00 |
| | 295.00 | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | 21,128.40 | 41,080.00 |

Settlement Statement Page 3

This page is attached to and made part of the Settlement Statement in the matter described on Page 1 of the Settlement Statement.

I have carefully reviewed this Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the Settlement Statement.

| Borrower(s) | | 05/06/05 | Seller(s) | | 05/06/05 |
|---|---|---|---|---|---|
| | Sharbanou Azar Itajlan | | | Hyun Ok Lee | |
| | Alex Mehrabi | 05/06/05 | | Sung Il Lee | 05/06/05 |

The Settlement Statement which I have prepared is a true and accurate account of funds received and funds disbursed or to be disbursed for this transaction.

05/06/05 _____ , Settlement Agent

WARNING: It is a crime to knowingly make false statements to the United States on this form. Penalties upon conviction can include a fine and imprisonment. For details see:
Title 18 U.S. Code Section 1001 and Section 1010.

2005010480.002    BK 17266 1760    05/10/2005 08:20:30

Web Cover Sheet Version 1.0                                                 Page 1 of 1

## Fairfax County Land Records
### Cover Sheet

**Instruments**
  TRUST

**Grantor(s)**
  MEHRADI, ALEX AND HAJIAN, SHARBANOU AZAR _I_N

**Grantee(s)**
  UNION FEDERAL BANK OF INDIANAPOLIS _I_N

| Consideration | 330,000.00 | Consideration % | | 100 | |
|---|---|---|---|---|---|
| Tax Exemption | | Amount Not Taxed | | | |
| DEM Number | | Tax Map Number | | 044-4-1/80/00/4 | |
| Original Book | | Original Page | | | |
| Title Company | FIRST WASHINGTON TITLE COMPANY | | | Title Case | 05-1044A |
| Property Descr. | LOT 4, HUNTER SUBDIVISION | | | | |
| Certified | No | Copies | 0 | Page Range | |



http://166.94.9.156/coversheet/cover_request.cfm                        5/9/2005



EXHIBIT
C
ALL-STATE LEGAL®

BK 17266 1761

Please Return to:
West Washington Title Co.
5001 Braddock Rd. Suite 220
Springfield, VA 22151
File # ___05-1044A___
Tax Map # __044-4-18-000-4__

Record To: Attn: Post Prod/Loan Delivery Dept 441
Union Federal Bank of Indianapolis
7500 West Jefferson Boulevard
Fort Wayne, IN 46804

Prepared By: Dave Donodesta, Union Federal Bank of Indianapolis
7500 W. Jefferson Blvd.
Fort Wayne, IN 46804

Tax Map Reference #:

RPC/Parcel ID #:  44-4-18-4

—[Space Above This Line For Recording Data]—

## DEED OF TRUST

Purchase Money                                2353338

The following information, as further defined below, is provided in accordance with Virginia law:

This Deed of Trust is given by Alex Mehrabi , and Sharbanou Azar Hajian, husband and wife

Borrower (trustor), to Chris Beatley, Attorney                                    . 05

Trustee, for the benefit of Union Federal Bank of Indianapolis                   . 05

as beneficiary.                                                                   . 4

Box 237 JK

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

66610734

VIRGINIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

-6V(VA) (0107)                                                   Form 3047  1/01

Page 1 of 18                    Initials

VMP MORTGAGE FORMS - (800)521-7261

BK 17266 1762

(A) "Security Instrument" means this document, which is dated  May 6th, 2005    2353338
together with all Riders to this document.
(B) "Borrower" is  Alex Nehrabi, and Sharbanou Azar Hajian, husband and wife

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  Union Federal Bank of Indianapolis

Lender is a  Federal Savings Bank
organized and existing under the laws of  the United States
Lender's address is  7500 W. Jefferson Boulevard, Fort Wayne, IN 46804

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is  Chris Beatley, Attorney

Trustee (whether one or more persons) is a Virginia resident and/or a United States or Virginia-chartered
corporation whose principal office is located in Virginia    Trustee's address is
221 S Payette Street, PO Box 123, Alexandria, VA 22313
"Trustee" is  Charles E Bell

Trustee (whether one or more persons) is a Virginia resident and/or a United States or Virginia-chartered
corporation whose principal office is located in Virginia    Trustee's address is
10467 White Granite Dr #104, Oakton, VA 22124
(E) "Note" means the promissory note signed by Borrower and dated May 6th, 2005
The Note states that Borrower owes Lender  Five Hundred Thirty Thousand and 00/100
                                                                                              Dollars
(U.S. $    530,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than May 1st, 2035            . The interest rate
stated in the Note is  Five.    and  875/ 1000
                                                                percent (        5.875        %)
If this Security Instrument is an adjustable rate mortgage loan, this initial rate is subject to change in
accordance with the attached Adjustable Rate Rider.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☒ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

4(VA) (0102)                          Page 2 of 16              Initials:  A.N.              Form 3047  1/01
                                                                            S. H



BK 17260 1703

2353330

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
Recorder                    of    Fairfax                        :
      [Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LOT 4, HUNTER SUBDIVISION, AS THE SAME APPEARS DULY DEDICATED, PLATTED AND RECORDED IN DEED BOOK 12151 AT PAGE 1960, AMONG THE LAND RECORDS OF FAIRFAX COUNTY, VIRGINIA.

BK 17266 1764

which currently has the address of

4817 Autumn Glory Way,                                          2353338
Chantilly                                                      [Street]
("Property Address"):                  [City/County], Virginia 20151    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

-6(VA) (0102)                  Page 4 of 15         Initials: ____         Form 3047   1/01
                                                    S.H

BK 17286 1765

2353338

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

4(VA) (0102)          Page 5 of 15          Initials _L M_ 5. 4.          Form 3047 1/01

BK 17266 1766

2353330

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay in Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

-6(VA) (0107)                    Page 6 of 15         initial d.M        Form 3047  1/01
                                                        S.H

BK 17266 1767

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of

-4(VA) (0103)                    Page 7 of 16              Initials: _____          Form 3047    1/01
                                                            g. H

BK 17266 1768

2353338

progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage

-4(VA) (0102)                    Page 8 of 16                    Form 3047   1/01

BK 17286 1789

2353338

Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender for any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

-4(VA) (0102)    Page 8 of 15    Initials _____    5. 17    Form 3047 1/01

BK 17206 1770

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the

BK 17286 1771

2353338

permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of

BK 17266 1772

2363338

Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6(VA) (0107)                        Page 17 of 18              Initials: ___             Form 3047  1/01
                                                                S. H

BK 17266 1773

2353338

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower, the owner of the Property, and all other persons, notice of sale as required by Applicable Law. Trustee shall give public notice of sale by advertising, in accordance with Applicable Law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following orders: (a) to discharge the expenses of executing the trust, including a reasonable commission to Trustee; (b) to discharge all taxes, levies, and assessment, with costs and interest if these costs have priority over the lien of this Security Instrument, including the due pro rata thereof for the current year; (c) to discharge in the order of their priority, if any, the remaining debts and obligations secured by this Security Instrument, and any liens of record inferior to this Security Instrument under which sale is made, with lawful interest; and, (d) the residue of the proceeds shall be paid to Borrower or Borrower's assigns. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

-6(VA) (0107)   Page 15 of 16   Form 3047   1/01

BK 17266 1774

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
                                    Alex Mehrabi          -Borrower

_____    _____ (Seal)
                                    Bharbanou Azar Hajian  -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                  -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                  -Borrower

-6(VA) (0102)                Page 14 of 16          Form 3047  1/01

BK 17266 1775

**STATE OF VIRGINIA,** Fairfax                    County, ss:        2353338

The foregoing instrument was acknowledged before me this May 6th, 2005            by
Alex Mehrabi, and Sharbanou Azar Hajian

My Commission Expires:  1/ 31 / 2008

Notary Public

Form 3847  1/01

BK 17266 1776

## EXHIBIT A

### Legal Description

Lot 4, HUNTER SUBDIVISION, as the same appears duly dedicated, platted and recorded in Deed Book 12151 at Page 1960, among the land records of Fairfax County, Virginia.

1b

BK 17266 1777

# PLANNED UNIT DEVELOPMENT RIDER <sub>Z353338</sub>

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        6th           day of
May, 2003                       , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
        Union Federal Bank of Indianapolis

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

4817 Autumn Glory Way, Chantilly, VA 20151
                    [Property Address]
The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in

Covenants, Conditions, and Restrictions of Record

(the "Declaration"). The Property is a part of a planned unit development known as
The Preserve at Wymar

                [Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.
    PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:
    A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
Incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.
66610733

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3150 1/01

-7R (0411)          Page 1 of 3        Initials: _chelf_
           VMP Mortgage Solutions, Inc. (800)521-7291     J.H.

17

BK 17266 1778

2353330

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

-7R (0411)                     Page 2 of 3        Initials: _dVH_  S-H     Form 3150 1/01

18

BK 17266 1779

2353338

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)      *Alex Nahrabi* _____ (Seal)
-Borrower                    Alex Nahrabi                -Borrower

_____ (Seal)      *Hajan* _____ (Seal)
-Borrower                    Sherbanou Awar Hajian       -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                    -Borrower

_____ (Seal)      _____ (Seal)
-Borrower                    -Borrower

-7R (0411)              Page 3 of 3              Form 3150 1/01

19

05/10/2005

Document Details

http://www.fairfaxcounty.gov/cpan/index.cfm?Section=JU#anchor0

| Judgment # | Document Type | Judgment Date | Date/Time Docketed | Homestead | Where Rendered | Book # | Page # | Case File # |
|---|---|---|---|---|---|---|---|---|
| 263499 | | 10/26/1994 | 02/27/1995 04:30:00 PM | No | CIRCUIT CT OF BERKELEY COUNTY WEST VIRGINIA | | | L085602 |

| Plaintiffs | Firm? |
|---|---|
| ONE VALLEY BANK EAST | Y |

| Defendants | Firm? | SSN/License # | DOB | Address |
|---|---|---|---|---|
| MEHRABI, MOHAMMAD | N | | | 6067 BONNIE BERN CT BURKE, VA 22015 |

| Plaintiff Attorney | Defendant Attorney | Judgment Description |
|---|---|---|
| COON & JOHNSTON | None | 7,198.96 WITH POST JUDGMENT INTEREST AT 10% PER ANNUM FROM DATE OF JUDGMENT UNTIL PAID PLUS COSTS |

Executions

| Date Entered | Nature | Date Returned | Directed | Costs | Return Nature | Service Date |
|---|---|---|---|---|---|---|
| 03/28/1995 | FIFA | 05/22/1995 | FAIRFAX COUNTY | $12.00 | | |
| 07/28/1995 | LEVY | 10/26/1995 | FAIRFAX COUNTY | $25.50 | | |

Updates

None

Disclaimer: The data is current as of 11/25/2013 11:43:50 AM EST, but it is subject to change without notice.



EXHIBIT

11/25/2013 11:54 AM

Document Details

http://www.fairfaxcounty.gov/cpan/Index.cfm?Section=JU#anchor0

| Judgment # | Document Type | Judgment Date | Date/Time Docketed | Homestead | Where Rendered | Book # | Page # | Case File # |
|---|---|---|---|---|---|---|---|---|
| 282661 | | 03/12/1996 | 05/02/1996 04:30:00 PM | Yes | FAIRFAX COUNTY GENERAL DISTRICT COURT | | | C96001939 |

| Plaintiffs | Firm? |
|---|---|
| DONNELLY, RHEUBEN H CORP | Y |

| Defendants | Firm? | SSN/License # | DOB | Address |
|---|---|---|---|---|
| DULLES AIRPORT LOUDOUN TAXI | Y | | | PO BOX 16388 WASHINGTON, DC 200416388 |
| MEHRABI, ALEX | N | | | PO BOX 16388 WASHINGTON, DC 200416388 |

| Plaintiff Attorney | Defendant Attorney | Judgment Description |
|---|---|---|
| JOHN R SEVERINO | None | 5925.50 WITH INTEREST AT 9% FROM 12/01/93 33.00 COSTS |

| Executions |
|---|
| None |

| Updates |
|---|
| None |

Disclaimer: The data is current as of 11/25/2013 11:18:23 AM EST, but it is subject to change without notice.



EXHIBIT
E

11/25/2013 11:27 AM

Document Details

http://www.fairfaxcounty.gov/cpan/index.cfm?Section=JU#anchor2

| Judgment # | Document Type | Judgment Date | Date/Time Docketed | Homestead | Where Rendered | Book # | Page # | Case File # |
|---|---|---|---|---|---|---|---|---|
| 296371 | | 02/18/1997 | 04/02/1997 04:30:00 PM | No | RICHMOND GENERAL DISTRICT COURT | | | |

| Plaintiffs | Firm? |
|---|---|
| CENTRAL FIDELITY BANK BANK CARD DIVISION | Y |
| CENTRAL FIDELITY NATIONAL BANK | Y |

EXHIBIT

| Defendants | Firm? | SSN/License # | DOB | Address |
|---|---|---|---|---|
| MEHRABI, MOHAMMAD | N | xxx-xx-6036 | | 6067 BONNIE BERN CT BURKE, VA 22015 |
| MEHRABI, SHARBANOU A | N | xxx-xx-3488 | | 6067 BONNIE BERN CT BURKE, VA 22015 |

| Plaintiff Attorney | Defendant Attorney | Judgment Description |
|---|---|---|
| None | None | 1563.80 WITH INTEREST AT 15.60% FROM 12/20/96 26.50 COSTS |

| Executions |
|---|
| None |

| Updates |
|---|
| None |

Disclaimer: The data is current as of 11/25/2013 11:18:23 AM EST, but it is subject to change without notice.

11/25/2013 11:30 AM

Document Details

http://www.fairfaxcounty.gov/cpan/Index.cfm?Section=JU#anchor3

| Judgment # | Document Type | Judgment Date | Date/Time Docketed | Homestead | Where Rendered | Book # | Page # | Case File # |
|---|---|---|---|---|---|---|---|---|
| 303072 | | 08/21/1997 | 09/24/1997 04:30:00 PM | Yes | FAIRFAX COUNTY GENERAL DISTRICT COURT | | | C97013594 |

| Plaintiffs | Firm? |
|---|---|
| DATANATIONAL | Y |
| VOLT INFORMATION SCIENCES INC | Y |

EXHIBIT

G

ALL-STATE LEGAL®

| Defendants | Firm? | SSN/License # | DOB | Address |
|---|---|---|---|---|
| DULLES AIRPORT EXPRESS TAXI | Y | | | 1301 MORAN RD 101 STERLING, VA 20166 |
| MEHRABI, ALEX | N | | | 1301 MORAN RD 101 STERLING, VA 20166 |

| Plaintiff Attorney | Defendant Attorney | Judgment Description |
|---|---|---|
| P CLARK KATTENBURG PC | None | 9310.64 WITH INTEREST AT 9% FROM 08/21/97 30.00 COSTS AND 1732.50 ATTY FEE. |

| Executions |
|---|
| None |

| Updates |
|---|
| None |

Disclaimer: The data is current as of 11/25/2013 11:18:23 AM EST, but it is subject to change without notice.

Document Details

http://www.fairfaxcounty.gov/cpan/Index.cfm?Section=JU#anchor4



| Judgment # | Document Type | Judgment Date | Date/Time Docketed | Homestead | Where Rendered | Book # | Page # | Case File # |
|---|---|---|---|---|---|---|---|---|
| 323942 | | 04/15/1999 | 04/23/1999 04:30:00 PM | No | FAIRFAX CIRCUIT COURT | | | L178334 |

| Plaintiffs | Firm? |
|---|---|
| BELL ATLANTIC VIRGINIA INC | Y |

| Defendants | Firm? | SSN/License # | DOB | Address |
|---|---|---|---|---|
| MEHRABI, ALEX MOHAMMAD | N | | | |
| MEHRABI, MOHAMMAD | N | | | |

EXHIBIT

H

ALL-STATE LEGAL®

| Plaintiff Attorney | Defendant Attorney | Judgment Description |
|---|---|---|
| TERRY C LEGUM | None | 92,218.38 WITH INTEREST AT 9% FROM 4/19/93, ATTY FEES (20%) 18,443.68, AND COSTS, TO DATE SUCH SUM BEING 148.00 |

**Executions**

| Date Entered | Nature | Date Returned | Directed | Costs | Return Nature | Service Date |
|---|---|---|---|---|---|---|
| 11/03/1999 | FIFA | 01/24/2000 | FAIRFAX COUNTY | $30.50 | | |

**Updates**

None

Disclaimer: The data is current as of 11/25/2013 11:18:23 AM EST, but it is subject to change without notice.

of 1

11/25/2013 11:42 AM

## FAIRFAX CIRCUIT COURT
## CIVIL CASE COVERSHEET

# 2014-07527

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. Wells Fargo Bank, N.A | 1. Sharbanou Azar Hajian, et al |
| 2. | 2. |
| 3. | 3. |

*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint

**Plaintiff Attorney:**

Name: Trenita J Stewart, Esq    Bar ID: 48412

Firm: Glasser & Glasser PLC

Street: 580 East Main St, Suite 600

City: Norfolk    State: VA    Zip: 23510

Phone Number: (757) 625-6787    Fax Number: (757) 625-5959

E-mail Address: tstewart@glasserlaw.com

**Nature of Complaint** (Check only one)        * Cases in the Civil Tracking Program

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice – Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity  * | Garnishment–Federal–180 days | Products Liability* |
| Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | ✓ Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction  * | Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| Declaratory Judgment * | Malpractice – Legal * | |

Damages in the amount of $ _____ are claimed.

Requested Service: Sheriff ✓  Private Process Server ☐  DMV ☐  Secretary of Commonwealth ☐
State Corporation Commission ☐  Publication ☐  No Service at this time ☐

CCR D-90 Civil Coversheet  (Revised – October 2011)

VIRGINIA:  IN THE CIRCUIT COURT FOR THE COUNTY OF FAIRFAX

WELLS FARGO BANK, N.A.,

                    **COMPLAINANT**

                                          Case No.: CL14-7527

v.

SHARBANOU AZAR HAJIAN, ET. AL.,

                    **RESPONDENTS**

## CONSENT ORDER

       THIS DAY comes the Complainant, Wells Fargo Bank, N.A. ("Complainant"), by counsel, upon the instant request for an entry of a Consent Order.  It appearing to the Court that Respondents, Sharbanou Azar Hajian and Iran Zolfaghar have been served with process of this Complaint, and agree to the relief sought herein;

       IT FURTHER APPEARING to this Court that all interested parties have been noticed of the instant hearing and hearing no objection to the entry of this Consent Order:

       It is hereby ADJUDGED, ORDERED and DECREED as follows:

1.      The deed of trust dated May 6, 2005 (Exhibit C to the Complaint) ("DOT"), is hereby reformed, *nunc pro tunc*, to May 10, 2005, to include the interest of Iran Zolfaghar, thereby creating a valid and enforceable lien against the Property known as 4817 Autumn Glory Way, Chantilly, VA 20151, in favor of Wells Fargo Bank, N.A., reflecting the interests of the parties to this Order; and that

2.      The DOT encumbers the interests of Sharbanou Azar Hajian, Alex Mehrabi, and Iran Zolfaghar, and is therefore a valid, first priority deed of trust secured by the Property; and that

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

EXHIBIT

2

3. A copy of this Consent Order and the DOT is to be recorded in and spread among the land records for this jurisdiction; and

4. The Complainant is directed to pay any necessary recording fees; and

5. This matter shall remain open on the Court's docket for resolution as to all other parties.

ENTER THIS __11__ day of __July__, 2014.

_____
Judge

We ask for this:

_____
Kelly R. Gring, Esq (VSB # 75999)
Trenita J. Stewart, Esq (VSB # 48412)
Glasser & Glasser, P.L.C.
580 E. Main Street
Suite 600
Norfolk, Virginia 23510
(757) 625-6787
kgring@glasserlaw.com
*Counsel for Wells Fargo Bank, N.A.*

Seen and Agreed:

_____
David M. Levy (VSB # 13403)
Surovell, Isaacs, Petersen, Levy, PLC
4010 University Drive
Second Floor
Fairfax, Virginia 22130
(703) 251-5400
dlevy@siplfirm.com
*Counsel for Sharbanou Azar Hajian and Iran Zolfaghar*

Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Fairfax, Virginia 23510-2212

2

07/18/2014
RECORDED FAIRFAX CO VA
TESTE:
CLERK

VIRGINIA:

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | ) | |
|     Plaintiff, | ) | |
| v. | ) | No. CL-2014-07527 |
| SHARBANOU AZAR HAJIAN, | ) | |
| ALEX MEHRABI, | ) | |
| IRAN ZOLFAGHAR, | ) | |
| ONE VALLEY BANK-EAST, N.A. | ) | |
| RHEUBEN H DONNELLY CORP, | ) | |
| CENTRAL FIDELITY NATIONAL BANK, | ) | |
| VOLT INFORMATION SCIENCES, INC. | ) | |
| BELL ATLANTIC VIRGINIA INC. | ) | |
|     Defendant(s). | ) | |

## ANSWER, GROUNDS FOR DEFENSE & COUNTER CLAIM

COMES NOW, Defendant, Alex Mehrabi, and in response to the allegations of the Complaint states as follows:

1.    In response to the allegations of paragraph 1, Defendant admits the Wells Fargo Bank, N.A. is a corporation doing business in the Commonwealth of Virginia, but there is no particular Deed of Trust referenced in this allegation; it simply states that the Wells Fargo Bank, N.A. is the beneficiary of "a Deed of Trust dated May 5, 2005." Without further specification, Defendant cannot either admit or deny this allegation and this part is therefore denied.

2.    The allegations of paragraph 2 are admitted.

3.    The allegations of paragraph 3 are admitted.

EXHIBIT

3

tabbies

4.      In response to the allegations of paragraph 4, Defendant admits that Ms. Zolfaghar is an individual residing in Fairfax County but believes that her name was fraudulently added to the Deed and therefore denies the remaining allegations of this paragraph.

5.      Defendant denies the allegations of paragraph 5 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

6.      Defendant denies the allegations of paragraph 6 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

7.      Defendant denies the allegations of paragraph 7 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

8.      Defendant denies the allegations of paragraph 8 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

9.      Defendant denies the allegations of paragraph 9 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

10.     The allegations of paragraph 10 are admitted.

11.     The allegations of paragraph 11 are admitted.

12.     Defendant admits that a Deed exists which purports to provide him and Defendants Hajian and Zolfaghar with this property but claims that he purchased this house together with his wife, Ms. Hajian, and that the name of Ms. Zolfaghar was fraudulently added to the Deed without his knowledge

2

and consent.

13.    Defendant has insufficient information to either admit or deny the allegations of paragraph 13 and therefore denies them.

14.    The allegations of paragraph 14 are admitted.

15.    In response to the allegations of paragraph 15 Defendant admits that Ms. Zolfaghar did not sign the Deed of Trust referenced but states that her name was fraudulently added to the deed and therefore she did not hold equitable title to this property.

16.    The allegations of paragraph 16 are admitted.

17.    In response to the allegations of paragraph 15 Defendant admits that Ms. Zolfaghar's name is on the deed but states that her name was fraudulently added to the deed and therefore she did not hold equitable title to this property.

18.    The allegations of paragraph 18 are admitted.

19.    In response to the allegations of paragraph 19, Defendant admits that he intended to provide the Bank with a Deed of Trust when he believed that he was purchasing the house along with his wife. He had no intention of giving the bank a valid Deed of Trust, had he known that the name of Ms. Zolfaghar had been fraudulently added to the Deed and this allegation is therefore denied.

20.    Denied for reasons stated in response to paragraph 19 of the Complaint.

21.    Denied for reasons stated in response to paragraph 19 of the Complaint.

22.    Defendant denies the allegations of paragraph 22 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

23.    Defendant denies the allegations of paragraph 23 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not

constitute a lien against this property.

24.    Defendant denies the allegations of paragraph 7 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

25.    Defendant denies the allegations of paragraph 8 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

26.    Defendant denies the allegations of paragraph 9 and states that any judgment by this creditor was discharged in bankruptcy long before this house was purchased and therefore does not constitute a lien against this property.

27.    Defendant denies the allegations of paragraph 27 and affirmatively stated that the Bank was in possession of copy of the sales contract the HUD-1 and loan applications and knew and should have known that the Deed was to be only in Mr. Mehrabi and Ms. Hajian's name.  The bank commissioned the creation of all closing documents including the Deed and was in possession of this file after it was recorded.  The Bank affirmatively failed to inform Mr. Mehrabi of this fraud perpetuated against him and therefore the ends of justice requires the bank to seek the removal of Ms. Zolfaghar's name from the Deed not the addition of her name to the Deed of Trust.

28.    The allegations of paragraph 28 are denied to the same extent that they were denied in previous responses.

29.    In response to the allegations of paragraph 29, Defendant admits that he provided the Bank with a Deed of Trust which purports to pledge his interest in the property.  He states affirmatively that he executed this document when he believed that he was purchasing the house along with his wife only. He had no intention of giving the bank a valid Deed of Trust, had he known that the name of Ms.

4

Zolfaghar had been fraudulently added to the Deed and any additional inferences are therefore denied.

30.    In response to the allegations of paragraph 30, Defendant admits that the name of Ms. Zolfaghar was added to the Deed but states that this was fraudulently done by Ms. Hajian and that he was not aware of it at that time and therefore claims that Ms. Hajian has no equitable title in the property. The allegations of this paragraph are therefore denied.

31.    In response to the allegations of paragraph 31, Defendant admits that he provided the Bank with a Deed of Trust which was only executed by him and Ms. Hajian.

32.    In response to the allegations of paragraph 32, Defendant admits that he intended to convey all his owner's interest to the Bank with a Deed of Trust. He states affirmatively, however, that he had such an intention and executed said document when he believed that he was purchasing the house along with his wife only. He had no intention of giving the bank a valid Deed of Trust, had he known that the name of Ms. Zolfaghar had been fraudulently added to the Deed and this allegations is therefore denied.

33.    In response to the allegations of paragraph 33, Defendant admits that there has been reformations of documents by the Court in Commonwealth of Virginia but denies that this is a case of mutual mistake where this can be done.

34.    The allegations of paragraph 34, 35 and 36 are denied.

35.    The allegations of paragraph 37 are denied to the same extent that they were denied in previous responses.

36.    The allegations of paragraph 38, 39 and 40 are denied.

37.    The allegations of paragraph 41 are denied to the same extent that they were denied in previous responses.

36.    The allegations of paragraph 42 and 43 are denied.

38.    The allegations of paragraph 44 are denied to the same extent that they were denied in

previous responses.

39.   The allegations of paragraph 45, 46, 47 and 48 are denied.

## GROUNDS FOR DEFENSE

40.   At any hearing in this case, Defendant shall rely on the following affirmative defenses:

a.   Unclean Hands

b.   Estoppel

c.   Statute of limitations

## COUNTER CLAIM

COMES NOW, Defendant, by Counsel, and hereby incorporates the allegations which he has made in his Answer and Grounds for Defense and further states as follows:

1.   Defendant Alex Mehrabi is a resident of the Commonwealth of Virginia and is married to Defendant, Sharbanou Azar Hajian who is also a resident and domiciliary of the Commonwealth of Virginia.   Defendant Iran Zolfaghar is his mother in law.

2.   In or about April of 2005, Defendant purchased a house located at 4817 Autumn Glory Way, Chantilly, VA 20151.   The closing date was scheduled by the bank for May 5, 2005.   The parties obtained a Mortgage from Wells Fargo Bank, N.A., hereinafter referred to as "the Bank" to purchase the property.   First Washington Title Company was selected by the Bank as its agent to prepare the Deeds and conduct the closing.

3.   On or about May 5, 2005, unbeknown to Defendant Mehrabi, the name of Iran Zolfaghar was added by the Bank and the title company to the Deed transferring the property to the parties.   The Deed transferring the property did not have the signature of Defendant Mehrabi.   None of the documents which were viewed by and required Mr. Mehrabi's name mentioned Ms. Zolfaghar and Mr. Mehrabi did

6

not become aware that her name had been added to the title to this property until much later.

4.    Mr. Mehrabi signed the promissory note and the Deed of Trust obligating himself and his wife for the entire mortgage not knowing that the name of Ms. Zolfaghar had been added by the bank, apparently at the behest of Ms. Sharbanou, to the title to this property in an unusual deed which did not have his signature affixed to it. Ms. Zolfaghar's name did not even appear on the HUD-1 statement prepared by the bank as an owner of this property.

5.    The Bank had an affirmative duty of care and an obligation to inform Mr. Mehrabi of the addition of Ms. Zolfaghar's name to the title to this property.

6.    In gross violation of this duty and obligation and with wanton disregard, the Bank and its agents the mortgage company and First Washington Title Company, failed to inform the Defendant as to the addition of this name.

7.    Defendant and his wife have continued to pay the mortgage on this property without any contribution from Ms. Zolfaghar.

8.    Ms. Zolfaghar has now filed a partition suit claiming a 1/3 interest in this property.

### Count I Negligence & Punitive Damages

9.    As a direct and proximate result of the banks gross negligence, Defendant has suffered damages in and is also entitled to recover punitive damages in the amount of $5,000,000.00.

WHEREFORE, Defendant requests for this Court to enter Judgment against the Plaintiff in the amount of $5,000,000.00. and attorney's fees and costs.

### County II Declaratory Judgment

10.    Plaintiff has now sought to reform the Deed of Trust in this matter an add the name of Ms. Zolfaghar for this property and creates an immediate controversy.

WHEREFORE Defendant requests for this Court to enter an Order decreeing that the Deed of

7

Trust to this property cannot be reformed.

**ALEX MEHRABI**
By Counsel

Fred M. Rejali, VSB# 38127
8200 Greensboro Drive, Suite 900
McLean, Virginia 22102
Tel. (703) 383-4848
Fax (703) 677-3148
fredrejali@gmail.com
Counsel for Defendant

### Certificate of Service

I hereby certify that a true copy of this pleading was mailed to:

Kelly R. Gring, Esq.
kgring@glasserlaw.com
elaine@glasserlaw.com
Glasser & Glasser, P.L.C.
580 Main Street
Suite 600
Norfolk, VA 23510

David M. Levy, Esq.
4010 University Drive, 2nd Floor
Fairfax, Virginia 22030
Counsel for Defendant

Counsel for the Plaintiff, this the 18th day of July 2014.

Fred M. Rejali

8

**VIRGINIA:**

## IN THE CIRCUIT COURT OF FAIRFAX COUNTY

| | | |
|---|---|---|
| Wells Fargo Bank NA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CL-2014-7527 |
| | ) | |
| | ) | |
| Sharbanou Azar Hajian, et al., | ) | |
| Defendant. | ) | |

### ORDER

THIS MATTER came before the Court on Plaintiff's Plea in Bar and Demurrer to

Defendant's Counterclaim; and

IT APPEARING to the Court, for reasons stated in Court and set forth in the memoranda

submitted by Counsel; it is

ADJUDGED AND ORDERED that Plaintiff's Plea in Bar is SUSTAINED and

Plaintiff's Demurrer to Defendant's Counterclaim is OVERRULED.

ENTERED on October ___14___, 2014.

Judge Jan L. Brodie

**ENDORSEMENT OF THIS ORDER BY COUNSEL OF RECORD FOR THE PARTIES IS WAIVED IN THE
DISCRETION OF THE COURT PURSUANT TO RULE 1:13 OF THE SUPREME COURT OF VIRGINIA.**

EXHIBIT

4



VIRGINIA:

### IN THE CIRCUIT COURT OF FAIRFAX COUNTY

WELLS FARGO BANK, N.A.                   )
                                          )
    Plaintiff,                       )
                                          )
v.                                        )  <u>Case No.</u> CL14-7527
                                          )
SHARBANOU AZAR HAIJIAN, et al.,           )
                                          )
    Defendants.                      )

### FINAL ORDER

THIS MATTER came on Plaintiff, Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion for Entry of a Final Order nonsuiting the remaining defendant, Alex Mehrabi ("Mehrabi") and Mehrabi's Motion to Vacate the July 11, 2014 Order; and

IT APPEARING that by Consent Order dated July 11, 2014, this Court reformed the Deed of Trust that was the subject of the Complaint in this matter to include the interest of the defendant Iran Zolfaghar; and

IT FURTHER APPEARING that by Order dated September 19, 2014, this Court granted Wells Fargo's Motion to Dismiss One Valley Bank-East, N.A. n/k/a Branch Banking and Trust Company, RH Donnelly Corp., f/k/a Reuben H. Donnelly Corp., Central Fidelity National Bank n/k/a Wells Fargo Bank, N.A., Volt Information Sciences, Inc. d/b/a Datanational, and Bell Atlantic Virginia, Inc. n/k/a Verizon Virginia Inc. as defendants in this matter; and

IT FURTHER APPEARING that by Order dated October 14, 2014, this Court sustained the Plea in Bar to the Defendant's Counterclaim; and

IT FURTHER APPEARING that Wells Fargo has suffered no previous nonsuit in this matter and there are no pending counterclaims, cross-claims or third party claims; and

1



EXHIBIT
5

IT FURTHER APPEARING that no further relief is sought by Wells Fargo herein; and

IT FURTHER APPEARING, based on the pleadings, memoranda, and arguments of counsel that the entry of this Order is proper in all other respects, it is hereby

~~ORDERED, ADJUDGED, and DECREED that Mehrabi's Motion to Vacate the July 11, 2014, Order is DENIED; and it is further~~ ORDERED that the Court does not rule on Mehrabi's Motion to Vacate; and it is further

ORDERED, ADJUDGED, and DECREED that the Complaint is dismissed, without prejudice, as nonsuited against Alex Mehrabi, and this case shall be removed from the docket.

THIS ORDER IS FINAL.

ENTERED January **23** , 2015.

_____
Judge, Fairfax County Circuit Court

WE ASK FOR THIS:

WALSH, COLUCCI,
LUBELEY & WALSH, P.C.

_____
John E. Rinaldi, VSB No. 31580
Matthew A. Westover, VSB No. 82798
4310 Prince William Parkway, Suite 300
Prince William, Virginia 22192
Telephone:    703-680-4664
Facsimile:    703-680-2161
jrinaldi@thelandlawyers.com
mwestover@thelandlawyers.com
*Counsel for Wells Fargo Bank, N.A.*

2

SEEN AND AGREED:

SUROVELL, ISAACS, PETERSEN
& LEVY, PLC

*David M Levy / MAW #82798 with permission*

David M. Levy, Esq., VSB No. 13403
4010 University Drive, Suite 200
Fairfax, Virginia 22030
Telephone:     703-277-9751
Facsimile:      703-591-2149
DLevy@siplfirm.com
*Counsel for Defendants Sharbanou Azar
Hajian, and Iran Zolfaghar*

SEEN AND Objected because Mr. Mehrabi
is a necessary party and cannot be removed
LAW OFFICES OF FRED M. REJALI
from the case without the case being
dismissed and that the order of July 11,
2014 is not valid due to lack
of jurisdiction.

Fred M. Rejali, VSB No. 38127
8200 Greensboro Drive, Suite 900
McLean, Virginia 22102
Telephone:     703-383-4848
Facsimile:      703-677-3148
fredrejali@gmail.com
*Counsel for Defendant, Alex Mehrabi*

3

## VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on* Tuesday *the* 21st *day of* April, 2015.

Alex Mehrabi,                                                                                 Appellant,

  against      Circuit Court No. CL14-7527

Wells Fargo Bank, N.A.,                                                        Appellee.

From the Circuit Court of Fairfax County

On April 20, 2015 came the appellant, who is self-represented, and filed a request for an extension of time to file his petition for appeal in this case.

Upon consideration whereof, the Court denies the request.

A Copy,

Teste:

Patricia L. Harrington, Clerk

By:

Deputy Clerk

**EXHIBIT**

6